UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 06-20471-CIV-UNGARO-BENAGES

KAREN ROSALES,
Plaintiff,

v.

THE KEYES COMPANY,

Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment, filed October 23, 2006 (D.E. 13). Plaintiff responded on November 21, 2006 (D.E. 24) and Defendant replied on December 6, 2006 (D.E. 32). On December 7, 2006, Plaintiff filed a Motion for Leave to File a Sur-Reply (D.E. 33) arguing that Defendant had raised a new argument in its Reply. Upon review of the Motion for Leave and Defendant's Opposition to the Motion for Leave (D.E. 36), as well as Defendant's Reply, the Court finds that the Reply is limited to rebuttal and comports with S.D. Fla. Local Rule 7.1.C. Therefore, the Motion for Leave is denied and the Court does not consider Plaintiff's proffered sur-reply in the disposition of the Motion for Summary Judgment.

Plaintiff brought this action seeking damages for Title VII pregnancy discrimination pursuant to the Civil Rights Act of 1964 and the Pregnancy Discrimination Act, 42 U.S.C. Section 2000e(k), and the Florida Civil Rights Act, Florida Statutes, § 760.01, *et seq*. against Defendant The Keyes Company. Defendant moves this Court for an entry of summary judgment, arguing that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant's articulated non-discriminatory reason for her termination was pretext for intentional

pregnancy discrimination.

## FACTS

Defendant, The Keyes Company, is a real estate brokerage company with approximately 32 offices that service over 2,000 real estate associates. (Chernoff Aff. ¶ 3). Plaintiff, Karen Rosales, was employed at the Keyes Company Aventura branch office ("Keyes Aventura") beginning in April 2004 at an hourly rate of $8.50. (Rosales Dep. 11, 33). Plaintiff was the front desk receptionist; her duties included answering the phones, filing, data entry, opening the office in the morning, greeting people as they entered, and other clerical tasks. (Aumoitte Dep. 10: 9-13; Rosales Dep. 13-14).

Jay Chernoff, the Branch Manager of Keyes Aventura, is responsible for the overall general management of the office; however, his primary responsibility is managing, supervising and training the approximately 75 sales associates who worked from the office. (Chernoff Dep. 7-8). The Office Administrator, Alice Aumoitte, is responsible for the general administrative services of Keyes Aventura and oversees the other administrative staff, which, during the term of Plaintiff's employment, included Rosales and Perla Lopez, the Assistant Administrator. (*Id*.). Chernoff hired Plaintiff following an interview conducted by Chernoff, Aumoitte, and Lopez. (Aumoitte Dep. 22: 14-16). During her employment, Aumoitte was Plaintiff's supervisor. (Rosales Dep. 33). When Plaintiff started working, Lopez provided Plaintiff's initial training for the position over a week or two weeks. (Aumoitte Dep. 16: 21-22; Rosales Dep. 14: 12-14).

According to Aumoitte, Plaintiff frequently made errors in filing and data entry. (Aumoitte Dep. 52: 9-10). Aumoitte claims that when she noticed the mistakes, she retrained Plaintiff. (Aumoitte Dep. 52-53). The retraining occurred for six hours over two days and

encompassed all of Plaintiff's tasks. (Aumoitte Dep. 32: 11-24). Lopez represents that Plaintiff's mistakes continued after retraining. (Lopez Aff. ¶ 4). Plaintiff disputes these representations. Plaintiff claims that Lopez never complained to her about mistakes in her work following her initial training. (Rosales Dep. 19: 5-7). Plaintiff also disputes that Aumoitte retrained her. (Rosales Decl. ¶ 6; Rosales Dep. 20).

Beginning in July 2004, Aumoitte and Lopez discussed terminating Plaintiff. (Aumoitte Dep. 53: 11-18). Aumoitte also informed Chernoff that Plaintiff was making frequent mistakes and that she wanted to terminate Plaintiff. (Aumoitte Dep. 54: 2-16; Chernoff Dep. 13-14).

In December 2004, Plaintiff was required to leave work early due to a medical issue relating to her pregnancy. (Rosales Decl. ¶ 1; Aumoitte Dep. 61-62). That evening Aumoitte called Plaintiff and asked whether she would be in the following day and, if so, to bring a note from the hospital. (Rosales Dep. 6-7; Rosales Decl. ¶ 2).

Plaintiff's medical treatment alerted Aumoitte and other employees of Keyes Aventura to Plaintiff's pregnancy. (Aumoitte Dep. 63: 11-15; Chernoff Dep. 19: 16-18). According to Plaintiff, when Aumoitte and Lopez learned of her pregnancy, they told her that "it wasn't the best time that [she] should have a second baby; [she] was too young; [she] was finishing school; and they would advise [her] to not have a baby at that time." (Rosales Dep. 16: 10-14). Additionally, Plaintiff says that they asked her if her work would be affected. (Rosales Dep. 17: 2-6). Aumoitte also asked her how much time she planned to take off after the birth and okayed Plaintiff's response that she would take one month. (Rosales Dep. 30: 1-6). Aumoitte denies having had conversations with Plaintiff about her pregnancy except in relation to Plaintiff's bleeding and the possibility of miscarriage. (Aumoitte Dep. 66-67). Aumoitte specifically denies

3

advising Plaintiff to consider having an abortion. (Aumoitte Dep. 67: 23-25).  Chernoff congratulated Plaintiff on her pregnancy but had no further conversations with Plaintiff about it. (Rosales Dep. 17: 10-19).

The details of Plaintiff's dismissal are in dispute.  According to Plaintiff, on January 2, 2005, Aumoitte came to her desk and told her that she was being let go because Keyes was not doing well financially and they would have to hire someone else at a lower salary of $7.50 per hour. (Rosales Dep. 33; Ex. 2, Pl.'s Answer to Interrog. # 8).  Aumoitte told her that the termination was not related to her work. (Rosales Dep. 33: 19-22).  Aumoitte also told Plaintiff she "should take some time off because she was pregnant and "maybe it's best if [you are] at home." (Rosales Dep. 34: 3-6).  Following Plaintiff's termination, the receptionist who replaced her was paid at a rate of $9.00 per hour. (Aumoitte Dep. 75).

Aumoitte testified that she terminated Plaintiff on December 29, 2004. (Aumoitte Dep. 21-22).  According to Aumoitte, when she spoke to Plaintiff, she gave her no reason whatsoever for the termination, as she was instructed. (Aumoitte Dep. 69).  Aumoitte testified that Plaintiff was terminated for her poor job performance and no other reason. (Aumoitte Dep. 52). Additionally, Lopez and Chernoff maintain that Plaintiff was terminated for "failure to improve her job performance after retraining, and for no other reason." (Lopez Aff. ¶ 5; Chernoff Aff. ¶ 7).

## **LEGAL STANDARD**

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[1]  Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).  If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

5

248 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

## **LEGAL ANALYSIS**

Plaintiff has alleged that she was terminated because of her pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), which provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." The Pregnancy Discrimination Act of 1978 amended Title VII by providing that the prohibition against employment-related discrimination "because of sex" or "on the basis of sex" includes discrimination based on pregnancy, childbirth, or related medical conditions. *See* 42 U.S.C. § 2000e(k). Plaintiff also alleged that her termination violated the Florida Civil Rights Act, Florida Statutes § 760.01, *et seq*. ("FCRA").

The analysis applied to pregnancy discrimination is the same analysis used in other Title

6

VII sex discrimination cases. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312-13 (11th Cir.1994). Additionally, because the FRCA was patterned after Title VII, federal case law interpreting Title VII is applicable to claims of discrimination under it. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

In Title VII cases based upon circumstantial evidence, the Court turns to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). Under this approach, plaintiff initially bears the burden of establishing a prima facie case of discrimination; this burden is "not onerous." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 254 (1981).[2] The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 253. If the defendant articulates a legitimate, nondiscriminatory reason, the plaintiff can avoid summary judgment by producing sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual. *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).

A plaintiff may establish pretext by undermining the credibility of the Defendant's proffered explanations. *See Combs*, 106 F.3d at 1538; *Burdine* 450 U.S. at 256 (plaintiff can

---

[2] To establish a prima facie case of pregnancy discrimination, a plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse affect on her employment; and (4) that she suffered from differential application of work or disciplinary rules. *Armstrong*, 33 F.3d at 1314. Defendant has not raised the issue of whether Plaintiff has established a prima facie case, but instead proffers a nondiscriminatory reason for the termination. Accordingly, the Court assumes for the purposes of this Motion that Plaintiff has made out a prima facie case. *See U.S. Postal Serv. V. Aikens*, 460 U.S. 711, 714-15 (1983) and *Combs*, 106 F.3d at 1539 n. 11.

establish that she was the victim of intentional discrimination by "showing that the employer's proffered explanation is unworthy of credence."). Sufficient evidence that the employer's justification is false, can in appropriate circumstances, allow the trier of fact to reasonably infer that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2108 (2000). Rather than relying on conclusory allegations of discrimination, the plaintiff must come forward with evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs*, 106 F.3d at 1538.

Defendant articulates that its nondiscriminatory reason for Plaintiff's termination was her poor job performance. Defendant argues that Plaintiff has produced no evidence that shows that the Keyes Company terminated Plaintiff for any other reason. In response, Plaintiff argues that she has produced sufficient evidence to create material issues of fact with respect to the issue of pretext.

First, Plaintiff argues that Defendant made inconsistent statements with respect to the reasons for her termination, therefore the "litigation reason" of poor work performance is unworthy of credence. Specifically, Plaintiff testified that she was told that the decision to terminate her was an economic decision and was not related to her performance. Defendant argues that it has consistently maintained that the sole reason for her termination was job performance because in their depositions and affidavits, Chernoff, Aumoitte and Lopez claimed that was the reason. However, the Court must view the facts in the light most favorable to the Plaintiff, and Plaintiff's testimony establishes that at the time of her discharge she was given the

8

alternate, and admittedly false, reason that she was being terminated in order to hire a receptionist at lower pay. Such evidence is circumstantial evidence that, when viewed in the light most favorable to Plaintiff, tends to establish that the later proffered reason of poor job performance is false and unworthy of credence.

Second, Plaintiff testified she did not make mistakes following her initial training period and that neither Lopez nor Aumoitte complained or pointed out mistakes in her work. Additionally, Plaintiff testified that she was not retrained as asserted by Aumoitte and in the affidavits of Lopez and Chernoff. Taken together, Plaintiff's assertions are circumstantial evidence of pretext because they call into question Aumoitte and Lopez's honesty with respect to whether the mistakes and retraining occurred. *See Vessels v. Atlanta Indep. School Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). In *Vessels*, an employee did not receive a promotion and alleged that he was not selected based on his race. *Id*. The Eleventh Circuit determined that the employee's denial of claims of unprofessionalism raised issues of fact as to whether that proffered reason was pretextual. In so finding, the Eleventh Circuit distinguished the facts from those of *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991). In *Elrod*, an employer claimed it terminated the plaintiff based on its belief that he was guilty of sexual harassment following its investigation of the claims. *Id*. The Court determined that plaintiff's presentation of evidence that allegations were untrue was insufficient to establish pretext because he failed to present evidence calling in to question the employer's sincere belief that the allegations were untrue. *Id*. at 1471. However, in *Vessels*, whether the events occurred was within the supervisor's personal knowledge; the supervisor did not rely on her belief as to whether events occurred in making the employment decision. When the plaintiff directly denied that incidents of unprofessional

9

conduct occurred and denied that conferences regarding the incidents occurred, the supervisor's honesty was implicated. *Id.* The Court held that such denials raised issues of fact with respect to pretext. Likewise, in this case, Aumoitte and Lopez claim to have personal knowledge of mistakes made by Plaintiff and Aumoitte claims to have retrained Plaintiff in an effort to retain her, which failed. Plaintiff's denial of these claims raises an issue of fact as to whether Defendant's reason is pretextual.

Additionally, Plaintiff relies on the fact that it was a matter of weeks between her absence from work for a pregnancy-related medical issue and her termination. Aumoitte and Chernoff testified that the event alerted them to the pregnancy. Close temporal proximity, while probably insufficient to establish pretext by itself, can serve as some evidence of pretext. *See Hurlbert v. St. Mary's Health Care System, Inc*. 439 F.3d 1286, 1298 (11th Cir. 2006) (holding that district court erred in determining that plaintiff failed to present evidence of pretext sufficient to preclude summary judgment).

Finally, Plaintiff argues that statements by Aumoitte and Lopez regarding her pregnancy are evidence which would permit a jury to disbelieve Defendant's articulated reason for termination. The statements by Aumoitte concerned whether the Plaintiff should have the baby, and upon her termination, if she should take time off or that it would be best to stay at home. Plaintiff argues that evidence of Aumoitte's statements are direct evidence of discrimination. In response, Defendant argues that the statements attributed to Aumoitte are neither direct nor circumstantial evidence that pregnancy discrimination was a factor in the decision to terminate Plaintiff.

The Court agrees with Defendant that the statements are not the type of direct evidence of

discrimination which would render the *McDonnell Douglas* analysis inappropriate. "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635 (11th Cir. 1998); *accord Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir.1989); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate...constitute direct evidence of discrimination." *Carter*, 870 F.2d at 582. Remarks regarding pregnancy and leave of the type described by Plaintiff do not fit the narrow definition of "direct evidence" within the employment discrimination context. *See Standifier v. Sonic-Williams Motors, LLC* 401 F. Supp. 2d. 1205, 1215 n. 7 (N.D. Ala. 2005); *Walker v. Golden Pantry Food Stores, Inc*. 2005 WL 3179988 (M.D. Ga. 2005)(derogatory comments about plaintiff's pregnancy and statements that she 'would not be there long' are not direct evidence).

Although the remarks are not direct evidence of discrimination, they are circumstantial evidence of bias. The Court finds that viewed in the light most favorable to Plaintiff, the statements, if believed, could be found to cast doubt on the credibility of the reasons stated by Defendant for the termination.

Taken together and viewed in the light most favorable to Plaintiff, the evidence that she was given an alternate, false reason for her termination, her denials with respect to her performance and retraining, the timing of her dismissal, and the comments made by Plaintiff's supervisor regarding the pregnancy raise a genuine issue of material fact as to whether Defendant's articulated reason for terminating Plaintiff was pretextual. Summary judgment for Defendant is thus inappropriate.

11

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is DENIED.

**DONE AND ORDERED** in Chambers at Miami-Dade, Florida, this 2d day of January, 2007.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

**Copies furnished**:
Todd W. Shulby, Esq.
Bruce D. Friedlander, Esq.